JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Angel Santana, appeals his conviction and sentence. For the reasons that follow, we affirm the finding of guilt, but find error in the sentence imposed.
 {¶ 2} On February 10, 2005, appellant was indicted on one count of aggravated burglary, a felony of the first degree in violation of R.C. 2911.11; one count of aggravated robbery, a felony of the first degree in violation of R.C. 2911.01; and two counts of felonious assault, felonies of the second degree in violation of R.C. 2903.11. Each of the four counts contained one year- and three-year firearm specifications pursuant to R.C.2941.141 and 2941.145, respectively.
 {¶ 3} Appellant filed a motion to suppress identification evidence and after a hearing was held, the trial court denied the motion. Appellant thereafter waived his right to a jury trial and the case proceeded to a bench trial. At the conclusion of the State's case-in-chief, the defense made a Crim.R. 29 motion for acquittal, which was overruled. After presenting one witness on its behalf, the defense renewed its Crim.R. 29 motion for acquittal, which the trial court again denied. The court subsequently found appellant guilty of all four counts.
 {¶ 4} For the purpose of sentencing, the court merged the two felonious assault charges with each other, and also merged each one-year firearm specification with each three-year firearm specification, leaving three three-year firearm specifications. The court sentenced appellant to the minimum three-year sentence on the aggravated burglary and aggravated robbery, and to the minimum two-year sentence on the merged felonious assaults, all to be served concurrently. The court further sentenced appellant to three years on each of the firearm specifications, to run consecutively to each other as well as consecutively to the sentence on the underlying offenses. Thus, appellant was sentenced to a total twelve-year term.
 {¶ 5} At trial, the victim, Luis Graciani, testified that on August 11, 2003, he was in his living room watching television when he heard a loud noise in his kitchen. Upon investigating, Graciani found a man breaking through his door and holding a gun in his hand. Graciani grabbed for control of the gun and was able to get a hold of the gun's barrel. At that time, Graciani was able to clearly see the intruder's face and, in court, identified appellant as the intruder.
 {¶ 6} After Graciani got a hold of the gun, he and the intruder struggled for control of it and eventually ended up outside. Once outside, the barrel of the gun slipped from Graciani's hand. At that point, appellant, at a distance of about five feet, pointed the gun at Graciani and said "give me your money." Graciani ran and appellant shot him in the back. Graciani ran until he fell down on the sidewalk in front of his neighbor's house. Graciani testified that the whole encounter with appellant lasted between one and a half to two minutes.
 {¶ 7} As a result of the shooting, Graciani was treated in the emergency room. He provided the police with a description of appellant, but the police did not initially have enough information to proceed with an investigation.
 {¶ 8} Subsequently, in February 2004, Graciani was at a temporary agency looking for employment when he saw appellant. He did not call the police at that time. Graciani, however, saw appellant another time and called the police. The police were not able to arrive at the scene before appellant left, however. Yet another time though, Graciani observed appellant walking on Clark Avenue.
 {¶ 9} As a result of the sightings of appellant and by engaging in some investigation, Graciani was able to provide part of appellant's name to the police. The police then resumed investigating the case and some photo line-ups were created. Graciani did not identify his assailant from the first line-up.[1] He did, however, identify his assailant, appellant, from the second line-up.
 {¶ 10} Jeanette Perez, appellant's girlfriend, testified on appellant's behalf. According to Perez, she and appellant were together at work on the day and at the time of the incident.
 {¶ 11} In his first assignment of error, appellant contends that the trial court erred in sentencing him consecutively on each of the three firearm specifications. We agree.
 {¶ 12} R.C. 2929.14 (D)(1)(b) provides that:
 {¶ 13} "A court shall not impose more than one prison term on an offender under division (D)(1)(a) of this section [governing sentencing on firearm specifications] for felonies committed as part of the same act or transaction."
 {¶ 14} The Supreme Court of Ohio has defined "transaction" as "a series of continuous acts bound together by time, space and purpose, and directed toward a single objective." State v.Wills (1994), 69 Ohio St.3d 690, 691, 635 N.E.2d 370.
 {¶ 15} This court has previously held, relying on the Supreme Court's definition in Wills of "transaction," that when "the underlying felonies were clearly committed * * * as part of the same transaction * * * the trial court, pursuant to R.C.2929.14(D)(1)(a)(i), should have sentenced appellant to only one three-year prison term for a single firearm specification."State v. Evans (Sept. 3, 1998), Cuyahoga App. No. 73018, at 17. See, also, State v. Kaszas (Sept. 10, 1998), Cuyahoga App. Nos. 72546, 72547; and State v. Gregory (1993), 90 Ohio App.3d 124,628 N.E.2d 86.
 {¶ 16} The State, however, relies on State v. Hackett,
Cuyahoga App. No. 83810, 2004-Ohio-5387, where this court affirmed the trial court's refusal to merge the gun specifications. In Hackett, the defendant and his accomplices entered a bank, pistol-whipped the bank manager and held seven customers at gunpoint while they robbed the bank. When the defendant and his accomplices left the bank, the police confronted them. The defendant and his accomplices opened fire against the police as they tried to flee the scene.
 {¶ 17} The defendant pleaded guilty to two counts of attempted aggravated murder, one count of aggravated robbery, one count of felonious assault and one count of kidnapping, all with one- and three-year firearm specifications. In regard to the gun specifications, the court sentenced the defendant to two of the specifications, to be served prior, and consecutively, to the sentence on the underlying felonies.
 {¶ 18} In affirming the trial court, this court noted that the defendant and his accomplices used the guns to terrorize the bank customers and employees during the commission of the bank robbery, and that their use of the guns on the police while attempting to flee the scene was "a different purpose." Id. at ¶ 5. As such, this court held that "[t]he appearance of the police constituted an intervening factor from the actual robbery itself, thus prompting a new series of actions designed to permit a getaway." Id.
 {¶ 19} The State argues that, in this case, when appellant broke through Graciani's door he completed the crime of aggravated burglary and then moved on to complete the crime of aggravated robbery. The State argues that upon completion of that crime, appellant then went on to complete the third and final crime of felonious assault. Thus, the State argues that there were "separate courses of conduct and intervening factors" present to justify the three gun specification sentences. We are not persuaded.
 {¶ 20} The facts of this case demonstrate that appellant's single objective was to rob Graciani; he broke into Graciani's home to commit a robbery and he shot Graciani to stop him from escaping from the robbery. There was no intervening factor in this case as there was in Hackett. Notably, in Hackett, the defendant was not sentenced on all the gun specifications. He was only sentenced on two: one for his conduct while committing the robbery with the victims being the bank patrons, and one for his conduct after the robbery was completed with the victims being the police officers from whom the defendant and his accomplices were attempting to flee.
 {¶ 21} Accordingly, we sustain appellant's first assignment of error and reverse and remand for resentencing.
 {¶ 22} In his second and final assignment of error, appellant challenges that sufficiency and the weight of the evidence.
 {¶ 23} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, 216, 555 N.E.2d 689. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
 {¶ 24} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citing State v.Thompkins (1997), 78 Ohio St.3d 380, 390, 1997-Ohio-52,678 N.E.2d 541 (Cook, J., concurring).
 {¶ 25} "[B]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA0064625.
 {¶ 26} When a defendant asserts that his conviction was against the manifest weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340, 515 N.E.2d 1009. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 27} In challenging the sufficiency and weight of the evidence, appellant contends that "[t]his `cold case' was solved by questionable and unreliable eyewitness identification * * *."
 {¶ 28} As will be discussed below, appellant's conviction was not against the manifest weight of the evidence and, thus, his Crim.R. 29 claim of insufficiency of the evidence also fails.
 {¶ 29} R.C. 2911.11, governing aggravated burglary, required the State to prove that 1) appellant trespassed in an occupied structure, 2) when another person other than an accomplice was present, 3) with a purpose to commit any criminal offense in the structure, and 4) appellant had a deadly weapon on his person or under his control.
 {¶ 30} R.C. 2911.01 governs aggravated robbery and required the State to prove that 1) appellant, in attempting to commit a theft offense, 2) had a deadly weapon on or about his person or under his control and either displayed the weapon, brandished it, indicated that he possessed it, or used it.
 {¶ 31} R.C. 2903.11, governs felonious assault, and required the State to prove, as to count three of the indictment, that appellant caused serious physical harm to Graciani. As to count four of the indictment, R.C. 2903.11 required the State to prove that 1) appellant caused or attempted to cause physical harm to Graciani, 2) by means of a deadly weapon.
 {¶ 32} Graciani testified that on August 11, 2003, he was in his living room watching television when he heard a loud noise in his kitchen. Upon investigating, Graciani found a man breaking through his door and holding a gun in his hand. Graciani grabbed for control of the gun and was able to got a hold of the gun's barrel. At that time, Graciani was able to clearly see the intruder's face and, in court, identified appellant as the intruder. The intruder and Graciani struggled for control of the gun and eventually ended up outside. Once outside, the barrel of the gun slipped from Graciani's hand. At that point, appellant, at a distance of about five feet, pointed the gun at Graciani and said "give me your money." Graciani ran and appellant shot him in the back. Graciani ran until he fell down on the sidewalk in front of his neighbor's house.
 {¶ 33} As a result of the shooting, Graciani was treated in the emergency room. He provided the police with a description of appellant, but the police did not initially have enough information to proceed with an investigation.
 {¶ 34} Subsequently, in February 2004, Graciani was at a temporary agency looking for employment when he saw appellant. He did not call the police at that time. Graciani, however, saw appellant another time and called the police. The police were not able to arrive at the scene before appellant left, however. Yet another time though, Graciani observed appellant walking on Clark Avenue.
 {¶ 35} As a result of the sightings of appellant and by engaging in some investigation, Graciani was able to provide part of appellant's name to the police. The police then resumed investigating the case and some photo line-ups were created. Graciani did not identify his assailant from the first line-up, in which appellant was not featured. He did, however, identify appellant from the second line-up.
 {¶ 36} In evaluating the testimony, the trial judge noted that Graciani's testimony was credible, while Perez's testimony was "very slippery." We note that it is the express province of the trier of fact, whether a jury or the court itself, in a criminal prosecution to determine the credibility of witnesses.State v. Bridgeman (1977), 51 Ohio App.2d 105.
 {¶ 37} Upon review of the record, there was significant evidence that appellant was Graciani's assailant and that he possessed and used a firearm to commit aggravated burglary, aggravated robbery and felonious assault and that he caused serious physical harm to Graciani.
 {¶ 38} Accordingly, appellant's second assignment of error is overruled.
Finding of guilt affirmed; reversed and remanded for resentencing.
This cause is affirmed and reversed and remanded consistent with the opinion herein.
It is, therefore, ordered that appellant recover from appellee costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, A.J., Concurs.
 Gallagher, J., Concurs in Judgment only as to First Assignmentof error and concurs fully as to Second Assignment of error.
[1] Appellant was not featured in the first photo line-up.